**Richmond**

NANCY ROBINSON

v.

JOSEPH ROBINSON

No. 1047-86

Decided October 20, 1987

COUNSEL

Annie Lee Jacobs (Lowe & Jacobs, Ltd., on briefs) for appellant.

Ronald R. Tweel (Michie, Hamlett, Donato & Lowry, on brief) for appellee.

OPINION

**BENTON, J.** — Nancy Robinson appeals that portion of the final decree of divorce which disapproved the findings of the commissioner in chancery and limited her visitation with her children to the State of Virginia. Because we conclude that the evidence supports the findings of the commissioner and not the conclusions of the trial judge, we reverse the decree and remand the case to the trial court.

Joseph Robinson filed a bill of complaint seeking a divorce *a vinculo matrimonii* from Nancy Robinson on the grounds of adultery, willful desertion, and separation for more than one year. He

also requested that he be awarded permanent custody of their children, Sarah born in 1975 and Daniel born in 1978. The parties agreed that the husband would have temporary custody of the children with the wife having visitation rights in Virginia and Pennsylvania, the location of her parents' residences.

A commissioner in chancery was appointed to take evidence and make recommendations as to all pending issues; however, as a result of an agreement between the parties, the issues with respect to visitation were limited to where the visitation would take place and who would pay the costs of the trial proceeding. The husband argued that the children should not be permitted to visit the wife at her residence in Arizona.

The testimony before the commissioner established that when the wife left the marital home, she moved to Arizona to live in a house occupied by Robert Miller, whom she described as a friend from high school, and another male. At the time of the hearing, the wife and Miller shared a three bedroom house in a rural residential neighborhood, each having a separate bedroom. She testified that when the children visited they would stay in the third bedroom, which is furnished with two beds.

The husband and wife testified concerning a letter from Miller to the wife. The husband asserted that the letter contained language which suggested that Miller and the wife had a sexual relationship before she left the marital home. The wife denied that she had a sexual relationship with Miller and testified that the suggestive reference in the letter was the product of a crude joke started by her friends on a camping trip.

The commissioner also heard the testimony of two psychiatric experts. Dr. Jerry Heller, a psychiatrist, stated that there was a possibility that the children would be adversely affected if they were prohibited from visiting their mother in Arizona and that it would be better for them to visit her in her home. He further indicated that the children would not be adversely affected even if the wife was openly living in the same home with Miller.

Dr. Lon Shackelford, a psychologist, concurred with the view that the children could be harmed if denied the opportunity to visit their mother's home, and stated "that [a] sense of incompleteness and fantasy" might develop in the children if they were

not permitted to visit in their mother's home. When asked hypothetically whether the existence of a sexual relationship between Miller and the wife would cause harm to the children, he responded: "It depends on what the children know of that, what the children see of that, how much discretion there is in the relationship, what the children witness and what they don't, and generally in that case I would say a matter of how the relationship is presented to the children and discussed with them. And the ages of the children as well, of course."

The commissioner interviewed the children and made a finding that both children wished to visit their mother at her Arizona residence. Based on the evidence presented at the hearing, the commissioner found that it would be in the best interests of the children to visit their mother at her home in Arizona, but that such visitation should take place in Miller's absence. The husband objected to the recommendation that the children visit the wife in Arizona because of her "improper living arrangement."

The trial judge granted the husband an absolute divorce on the desertion ground and further decreed that visitation between the wife and her children was to take place only in Virginia. The visitation decree was premised upon the wife's living arrangement and the trial judge's belief that the Arizona courts might assert jurisdiction over the children.

Although the report of a commissioner in chancery is not given the same weight as a jury verdict, it must be sustained unless the trial judge determines that the evidence does not support the commissioner's findings. *See Hill v. Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984); *Bailey v. Pioneer Federal Savings & Loan Association*, 210 Va. 558, 562, 172 S.E.2d 730, 734 (1970); *Newton v. Newton*, 202 Va. 96, 102, 116 S.E.2d 94, 98 (1960); *Hudson v. Clark*, 200 Va. 325, 329, 106 S.E.2d 133, 136 (1958).

> This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report. On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong; but where the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under a correct application of the law, the evidence

supports the findings of the commissioner or the conclusions of the trial court. Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

*Hill,* 227 Va. at 577, 318 S.E.2d at 296-97 (citations omitted).

The trial court had before it the commissioner's report containing her finding "that there is adequate evidence to determine that it is in the best interest of the children to visit with their mother . . . at her residence in . . . Arizona." This finding was made after the commissioner interviewed the children, considered testimony from the parties, and considered the opinions of Dr. Heller and Dr. Shackelford. In deciding this case, the trial judge refused to accept the commissioner's finding and relied on what he referred to as "the light of human experience" to restrict visitation to Virginia. He stated that "it would just shock [his] conscience to allow these young children to go to Arizona and live or visit in this adulterous situation." As additional reasons for refusing visitation in Arizona, the trial judge stated that he had "no confidence that [the wife] would obey any rule of the [trial] court" and that "the Arizona Court could take jurisdiction over these children if it so chose and do whatever they wanted to do and [the husband] would have little if any recourse."

Upon our review of the evidence, giving due regard to the commissioner's ability to see, hear, and evaluate the witnesses, we conclude that the trial judge arbitrarily disturbed the commissioner's report when he determined that this case had to be decided in "the light of human experience." While courts may take judicial notice of facts commonly known from human experience, "facts which are not judicially cognizable must be proved, even though known to the judge or to the court as an individual. In other words, the individual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record." *Darnell v. Barker,* 179 Va. 86, 93, 18 S.E.2d 271, 275 (1942) (citations omitted).

The judge's oral opinion given from the bench does not reflect a consideration of the role of the commissioner in weighing the testimony which was given in her presence and does not reflect

a consideration of the statutory criteria for determining visitation.[1] Where the General Assembly has directed courts to consider specifically enumerated factors in exercising discretion to determine domestic relations issues, the Supreme Court and this Court have repeatedly held that it is reversible error for the trial judge to fail to consider those specifically enumerated factors. *See, e.g., Bristow v. Bristow,* 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980) (failure to consider factors in former Code § 20-107 was reversible error); *Woolley v. Woolley,* 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986) (failure to consider all of the factors of Code § 20-107.1 is reversible error); *Rexrode v. Rexrode,* 1 Va. App. 385, 395, 339 S.E.2d 544, 550 (1986) (error not to consider "all of the factors enumerated in Code § 20-107.3(E)"). Given the mandatory wording of Code § 20-107.2(1), we believe that the same rationale is applicable to decrees fixing the visitation rights of parents with their children.

The trial judge's alternative reason for not permitting the children to visit their mother in Arizona "or anywhere else outside the jurisdiction of the Commonwealth" was also erroneous. Although the husband concedes in his brief "that the [trial] court misstated the rule with respect to jurisdiction in a child custody dispute," we believe that it should be emphasized that both Virginia and Arizona have adopted the Uniform Child Custody Jurisdiction Act. *See* Code § 20-125 *et seq.*; Ariz. Rev. Stat. Ann. § 8-401 *et seq.* Furthermore, there is no evidence in this record from which the trial judge or we could conclude the Arizona courts would act arbitrarily if it became necessary for them to rule on any aspect of this case.

---

[1] Code § 20-107.2(1) provides, in pertinent part:

The court, in determining custody and visitation of minor children, shall consider the following:

a. The age and physical and mental condition of the child or children;

b. The age and physical and mental condition of each parent;

c. The relationship existing between each parent and each child;

d. The needs of the child or children;

e. The role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and

f. Such other factors as are necessary to consider the best interests of the child or children.

The commissioner's report and recommendation, based upon *ore tenus* testimony, were supported by the weight of the evidence and should not have been disturbed. We, therefore, reverse the decree of the trial court insofar as it bars the wife's visitation with her minor children in Arizona and remand this matter to the trial court with direction to enter a decree consistent with the report and recommendations of the commissioner.

*Reversed and remanded.*

Koontz, C.J., and Cole, J., concurred.